IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER RILEY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-1487 |
| | : | |
| OLDHAM GLOBAL, LLC | : | |

### MEMORANDUM

**Judge Juan R. Sánchez**                                                                    **February 13, 2025**

This is a dispute about severance pay. Plaintiff Christopher Riley was terminated by his former employer, Defendant Oldham Global, LLC ("Oldham"). Riley asserts he was owed severance pay pursuant to an employment agreement between himself and Oldham and brings claims for breach of contract (Count I) and violation of the Pennsylvania Wage Payment and Collection Law (PWPCL) (Count II). Oldham moves to dismiss Count II, arguing the PWPCL does not provide a remedy for severance pay and Riley's severance pay was expressly conditioned on compliance with a yearlong non-compete agreement. Because the PWPCL covers severance pay and Riley's employment agreement did not condition his severance pay on complying with a non-compete agreement, the motion will be denied.

**BACKGROUND**

On October 1, 2023, Oldham offered Christopher Riley a job as the "Coeus Operating Partner" of Oldham and the Chief Executive Officer of Actum Pharma Services, LLC, a company owned by Oldham. Compl. ¶ 7, ECF No. 1. On November 8, 2023, Riley accepted the offer and signed the offer letter ("Offer Letter"). *Id*. ¶ 7. In the Offer Letter, Oldham agreed to pay Riley an annual salary of $350,000. *Id*. ¶ 10. The Offer Letter states, in relevant part:

> Your employment at Oldham Global shall be "at-will", both you and Oldham Global are legally free to terminate the employment at any time and for any reason except as prohibited by applicable law. If Oldham Global serves notice of

> termination prior to October 1, 2024, severance will be payable to the employee equaling the remaining balance of the first-year salary. No severance is payable if termination is initiated by the employee.
>
> …
>
> Acceptance of this offer means you agree to be bound by all the policies, rules, and regulations of Oldham Global now in force as may be revised from time to time, and by all other such policies, rules, and regulations as may be hereafter implemented. You are required to observe and abide by the Company's policies, rules, and regulations. No such policy, rule or regulation shall alter, modify, or revoke your status as an at-will employee.
>
> …
>
> As a condition of employment at Oldham Global, we require that you sign and return a copy of our Non-Disclosure and Noncompetition Agreement, which is attached, no later than your start date.
>
> This letter is the final, complete, and exclusive statement of the terms of our offer of employment to you.

Offer Letter, ECF No. 8-1 at 3.[1]

Riley started working at Oldham's office in October 2023. Compl. ¶ 13. On January 18, 2024, Oldham terminated Riley. *Id*. ¶ 14. The reason for the termination is disputed. Oldham claims Riley lied about his qualifications and experience. Oldham Mot. Dismiss, ECF No. 6 at 2. Riley claims the accusation is baseless. Compl. ¶ 13. However, there is no dispute that Oldham initiated the termination and Riley has not received severance pay.

On April 10, 2024, Riley filed the Complaint in this action, asserting claims of breach of contract (Count I) and violation of the PWPCL (Count II). Riley filed the Complaint on April 10, 2024. On June 6, 2024, Oldham filed a partial Answer, which includes counterclaims for fraud in the inducement, breach of contract, unjust enrichment, promissory estoppel, and common law

---

[1] Plaintiff failed to attach the Offer Letter to the Complaint, but Oldham attached it to its reply in support of the motion to dismiss. The court may properly consider the Offer Letter at the motion to dismiss stage because it is "integral" to the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation and internal quotation marks omitted).

abuse of process.[2] ECF No. 5. Oldham moved to dismiss Count II of Riley's Complaint that same day. ECF No. 6.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

Oldham move to dismiss Count II of the Complaint, arguing (1) severance payments are not covered by the PWPCL and (2) the severance payment here is conditioned on Riley complying with a yearlong non-compete agreement. ECF No. 6 at 3-6; Oldham Reply, ECF No. 8 at 2-5.

---

[2] The Court dismissed the common law abuse of process counterclaim on January 8, 2025. ECF No. 25.

As to the first argument, the consensus among state and federal courts in Pennsylvania is that the PWPCL, 43 Pa. C.S. § 260.1, encompasses severance payments. *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 303 (M.D. Pa. 2016) ("Severance pay obligations in an employment contract fall under the [P]WPCL's definition of 'wages.'"); *Shaer v. Orthopaedic Surgeons of Cent. Pa., Ltd.*, 938 A.2d 457, 465 (Pa. Super. Ct. 2007) ("Although a number of [P]WPCL cases are either federal, trial level, or unpublished, and, therefore, not controlling, there seems to be consensus among them that severance pay and other separation related contractual arrangements are indeed covered by the [P]WPCL.").

Oldham's second argument requires the Court to interpret the Offer Letter. In Pennsylvania, the interpretation of a contract is a question of law for the court to decide. *Essential Utilities, Inc. v. Swiss Re Grp.*, 654 F. Supp. 3d 476, 480 (E.D. Pa. 2023). Courts are tasked with interpreting "the intent of the contracting parties, as they objectively manifest it." *Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999). The first step is to determine whether the contract is ambiguous. *Id*. A contract is ambiguous if more than one reasonable interpretation exists. *Ungarean v. CNA & Valley Forge Ins. Co.*, 323 A.3d 593, 604 (Pa. 2024). Courts may not "distort the meaning of the language or resort to a strained" interpretation to find ambiguity. *Id*. (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (1999)). Where the contract is clear and unambiguous, the plain meaning of the terms control. *Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231, 244 (Pa. 2024).

The Offer Letter is unambiguous as to the severance payment. When discussing the severance payment, the letter states: "If Oldham Global serves notice of termination prior to October 1, 2024, severance will be payable to the employee equaling the remaining balance of the first-year salary. No severance is payable if termination is initiated by the employee." ECF No. 8-

4

1 at 3. The plain meaning of this language is that Riley will receive a severance payment if Oldham fires him before October 1, 2024. There is no dispute that this condition was met.

Oldham asserts the reference to a non-compete agreement in the Offer Letter means that Riley must comply with the non-compete agreement for 12 months before he has a right to the severance payment. However, the Offer Letter makes clear that Riley was only "require[d]" to "sign and return a copy" of the non-compete agreement. ECF No. 8-1 at 3. The Court does not need to examine the non-compete agreement, a separate document, to interpret the plain terms of the Offer Letter.[3] *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93 (3d Cir. 2001) (finding that extrinsic evidence is only allowed if the contract is ambiguous). Oldham's interpretation is not reasonable and does not create an ambiguity. *See id.* (holding a contract "is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction"). Accordingly, the Court finds the Offer Letter does not condition Riley's severance pay on compliance with a yearlong non-compete agreement.

**CONCLUSION**

Because the PWCPL covers severance pay and the Offer Letter does not condition Riley's severance pay on compliance with a non-compete agreement, Oldham's motion is denied.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[3] In any case, the non-compete agreement, attached to Oldham's Reply, makes no mention of severance payments. *See* ECF 8-1 at 8.