IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER RILEY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-1487 |
| | : | |
| OLDHAM GLOBAL, LLC | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                                        **September 24, 2025**

Plaintiff Christopher Riley brings a breach of contract and Pennsylvania Wage Payment and Collection Law (PWPCL) action against Defendant Oldham Global, LLC ("Oldham") for failing to pay him the negotiated-for severance payment per the terms of an offer letter agreement. In response, Oldham brings numerous counterclaims against Riley including fraud in the inducement, breach of contract, unjust enrichment, and promissory estoppel because Riley lied about his qualifications. Both parties now move for summary judgment on Riley's breach of contract and PWPCL claims, and on Oldham's fraud in the inducement claim. Riley also moves for summary judgment on two of Oldham's counterclaims: unjust enrichment and promissory estoppel. The Court will deny both Defendant's and Plaintiff's motions because the fraud in the inducement claim presents genuine disputes of material facts.

**BACKGROUND**

On October 1, 2023, Oldham Global offered Christopher Riley a job. Riley Dep. 31:23-32:14; 122:17-21, ECF No. 56-4. On November 8, 2023, Riley accepted the offer and signed an offer letter ("Offer Letter"). Offer Letter, ECF No. 55-17 at 2-4. In the Offer Letter, Oldham agreed to pay Riley an annual salary of $350,000 to serve as the Coeus Operating Partner of Oldham and

the Chief Executive Officer of Actum Pharma Services, LLC, a company owned by Oldham. ECF No. 55-17 at 2. The Offer Letter states, in relevant part:

> Place of Employment: Berwyn office as needed, remote work with travel for meetings as needed to support the business . . . .
>
> . . . .
>
> Your employment at Oldham Global shall be "at-will", both you and Oldham Global are legally free to terminate the employment at any time and for any reason except as prohibited by applicable law. If Oldham Global serves notice of termination prior to October 1, 2024, severance will be payable to the employee equaling the remaining balance of the first-year salary. No severance is payable if termination is initiated by the employee.
>
> . . . .
>
> Acceptance of this offer means you agree to be bound by all the policies, rules, and regulations of Oldham Global now in force as may be revised from time to time, and by all other such policies, rules, and regulations as may be hereafter implemented. You are required to observe and abide by the Company's policies, rules, and regulations. No such policy, rule or regulation shall alter, modify, or revoke your status as an at-will employee.
>
> . . . .
>
> As a condition of employment at Oldham Global, we require that you sign and return a copy of our Non-Disclosure and Noncompetition Agreement, which is attached, no later than your start date.
>
> This letter is the final, complete, and exclusive statement of the terms of our offer of employment to you.

ECF No. 55-17 at 2-3.

On the same day, Riley also signed a Non-Disclosure and Noncompetition Agreement ("NDA") with Oldham. NDA, ECF No. 55-18 at 2-7. The NDA contained provisions prohibiting Riley from disclosing confidential information, soliciting employees, and competing with Oldham. ECF No. 55-18 at 2-5. It states, in relevant part:

> WHEREAS the Oldham Global wishes to employ Employee subject to the terms of this Agreement; and

2

> WHEREAS Employee wishes to undertake or continue such employment and to receive compensation and benefits from the Oldham Global subject to the terms of this Agreement;
>
> . . . .
>
> Reasonableness and Enforcement. . . . Employee is subject to immediate dismissal by the Oldham Global for any breach of this Agreement . . . . Any breach by Employee will entitle the Oldham Global immediately to seek enforcement of this Agreement and to obtain injunctive relief either preliminarily or permanently, . . . in addition to whatever other legal or equitable remedies may be available to the Oldham Global. In the event that the Oldham Global prevails in any action to enforce the terms of this Agreement, the Oldham Global will be entitled to recover its expenses incurred in enforcing this Agreement . . . .
>
> . . . .
>
> The terms and enforcement of this Agreement are governed by the laws of the State of Virginia, without regard to conflict of laws rules. Any legal action relating to or arising from this Agreement shall be brought in a state or federal court of competent jurisdiction in the State of Virginia, such venue being where the Oldham Global maintains its principal place of business.
>
> . . . .
>
> This Agreement constitutes the entire understanding between Employee and the Oldham Global with respect to its subject matter, superseding all prior oral or written negotiations, agreements, and understandings.

ECF No. 55-18 at 2, 5-7.

On November 8, 2023, Riley also provided a copy of his resume and shared his LinkedIn information to Oldham. Riley Resume and LinkedIn Link Email, ECF No. 55-19 at 2. Riley worked at Oldham's office located in Berwyn, Pennsylvania starting from October 2023. Def.'s Statement of Material Facts ¶ 49, ECF No. 55-1; Datawatch Key Fob Record, ECF No. 55-20. On January 18, 2024, Oldham terminated Riley's employment. Riley Termination Letter, ECF No. 55-23 at 3. Oldham claims Riley lied about his qualifications and experience. *Id*. Riley represented on his resume, both provided to Oldham and listed on his LinkedIn age that he served as CEO of

3

PepsiCo Australia and raised $62.5 million while CEO of Road Runner Media. Riley Resume, ECF No. 55-24 at 1, 5; Riley LinkedIn Page, ECF No. 55-26 at 2, 5-6. Riley did not serve as CEO of PepsiCo Australia, instead served as the Managing Director of PepsiCo Australia. PepsiCo Document, ECF No. 55-25. Riley claims while he did not hold the tile of CEO, the title of Managing Director is an equivalent title in responsibility and experience to CEO in Australia. Pl.'s Br. Supp. Mot. Partial Summ. J. 7-9, ECF No. 56-2. As to the Road Runner claim, he asserts he raised $62.5 million in initial commitments to scale the business, but the contract was terminated by Road Runner after $2 million was paid out. *Id.* at 7. Neither party disputes that Oldham initiated the termination, and Riley has not received severance pay.

On April 10, 2024, Riley filed the Complaint in this action, asserting claims of breach of contract and violation of the PWPCL. ECF No. 1. On June 6, 2024, Oldham filed a partial Answer, which includes counterclaims for fraud in the inducement, breach of contract, unjust enrichment, promissory estoppel, and common law abuse of process.[1] ECF No. 5. Oldham moved to dismiss the PWPCL claim of Riley's Complaint on the same day. ECF No. 6. On February 13, 2025, this Court denied Oldham's Motion to Dismiss. ECF No. 26. On June 5, 2025, Oldham filed a Motion for Summary Judgment. Def.'s Mot. Summ. J., ECF No. 55. On the same day, Riley filed a Motion for Partial Summary Judgment. Pl.'s Mot. Partial Summ. J., ECF No. 56.

**LEGAL STANDARD**

A court will grant summary judgment if a moving party can establish "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). The

---

[1] The Court dismissed the common law abuse of process counterclaim on January 8, 2025, based upon Plaintiff's unopposed Partial Motion to Dismiss. ECF No. 24.

4

moving party bears the initial burden of identifying the parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show there is a genuine issue of material fact requiring the case to proceed to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is "material" if it could affect the outcome of the suit—as determined based on the substantive law governing the issue—and a dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

In reviewing a motion for summary judgment, a court must draw all inferences in favor of the nonmoving party. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022). A court is to consider the parts of the record cited by the parties—such as depositions, documents, and affidavits—and may consider other parts of the record. Fed. R Civ. P. 56(c). A "district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).

**DISCUSSION**

This Court finds no genuine factual disputes involving the construction or interpretation of the contracts and turns to decide the issue as a matter of law. Riley argues he should be awarded summary judgment on the breach of contract claim because his Offer Letter states he is owed severance pay if he is terminated before October 1, 2024, and he was terminated on January 18, 2024. Pl.'s Br. Supp. Mot. Partial Summ. J. 2-4, ECF No. 56-2. Oldham Global argues the Offer Letter and the NDA constitute one agreement so the severance provision in the Offer Letter is void because Riley had violated the NDA. Def.'s Mot. Summ. J. 6-9, ECF No. 55.

A threshold issue this Court must decide is whether to read the Offer Letter and NDA together as one agreement or separately. This Court has previously found the Offer Letter and the

5

NDA should be read separately. ECF No. 25 at 4-5. Finding for Oldham Global at this stage would require the Court to reverse its previous finding, and there is no basis to do so.

Oldham argues under Pennsylvania law "where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." Def.'s Mot. Summ. J.7, ECF No. 55 (quoting *Southwestern Energy Production Co. v. Forest Resources, LLC*, 83 A.3d 177, 187 (Pa. Super. 2013)). This proposition does not apply in this case because the contracts in *Southwestern Energy* had provisions that explicitly referred to and incorporated the related contracts or documents. 83 A.3d at 187.

In the Offer Letter, signing the NDA is a condition to the validity of the employment offer. However, the Offer Letter does not make compensation or even continued employment contingent on adherence to the terms of the NDA. The Offer Letter does not reference to the NDA in this manner. The NDA's provisions do not mention the existence of the Offer Letter.

"When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 509-10 (Pa. Super. Ct. 2013) (internal quotation marks and citations omitted). The Offer Letter and NDA do not have unclear or ambiguous terms. All the terms of the NDA are clear and unambiguous terms. The NDA also has its own independent enforcement mechanism. If Riley breaches the NDA, its provisions expressly authorize Oldham to dismiss Riley, seek judicial enforcement of the agreement, and obtain injunctive relief, money damages, and costs. NDA, ECF No. 55-18 at 5.

The Pennsylvania Superior Court dealt with a similar situation to this case in *Solar Innovations, Inc. v. Plevyak*, No. 1110 MDA 2012, 2013 WL 11272849, at *7 (Pa. Super. Ct. Mar. 20, 2013). In *Plevyak*, a new employee signed a confidentiality agreement with non-disclosure and non-compete disclosure provisions, and an employment agreement which finalized his compensation, benefits, and hours. *Id.* at *6. Years later, he executed a modified employment agreement. *Id.* When the employer sued to enforce the confidentiality agreement, the employee argued the original employment agreement and the confidentiality agreement were one contract and the modified employment agreement superseded both. *Id.* at *7. The Superior Court rejected this interpretation. *Id.* It found "each agreement dealt with separate subjects. [The employer] had a company policy requiring employees to sign two documents as part of employment—a written offer letter on hours and compensation, as well as a separate contract covering confidentiality and employee restrictions on use of proprietary material." *Id.* The court found the modified employment agreement and the confidentiality agreement to be "independent contracts." *Id.*

The dynamic between the Riley's Offer Letter and the NDA are analogous to *Plevyak*. Riley's Offer Letter and the NDA are about different subject matters. The Offer Letter covers issues of compensation. The NDA outlines Riley's restrictions on competition and disclosure. Since they have different subject matters, each agreement is separate.

Oldham additionally asserts the NDA "makes clear that [Riley's] compensation and benefits shall be subject to the terms of that Agreement." Def.'s Mot. Summ. J. 7-8, ECF No. 55. It cites language located at the top of the NDA which states:

> WHEREAS the Oldham Global wishes to employ Employee subject to the terms of this Agreement; and
>
> WHEREAS Employee wishes to undertake or continue such employment and to receive compensation and benefits from the Oldham Global subject to the terms of this Agreement . . . .

7

NDA, ECF No. 55-18 at 2.

However, this language is only a recital provision. "A recital provision, though it may provide background information or serve as an interpretative aid, does not control over the operative terms of a contract." *Electra Realty Co. Inc. v. Kaplan Higher Educ. Corp.*, 825 F. App'x 70, 73 (3d Cir. 2020) (citing *Neal D. Ivey Co. v. Franklin Assoc.*, 87 A.2d 236, 239 (Pa. 1952); *Wyeth Pharm., Inc. v. Borough of West Chester*, 126 A.3d 1055, 1062 (Pa. Commw. Ct. 2015); *Grynberg v. F.E.R.C.*, 71 F.3d 413, 416 (D.C. Cir. 1995)). The NDA language here serves as background information. It does not make the entire Offer Letter subject to the terms of the NDA or impose any additional obligations on the parties. Therefore, the Offer Letter and NDA are separate complete agreements.

The Court next deals with which state's law applies to the contract. A federal court sitting in diversity jurisdiction applies state substantive law, as determined by the choice-of-law rules of the forum state. *Zanetich v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 140 (3d Cir. 2024) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941)). So, this Court uses the choice-of-law principles of Pennsylvania. Pennsylvania courts generally follow choice-of-law provisions in contracts. *Nationwide Mut. Ins. Co. v. West*, 2807 A.2d 916, 920 (Pa. Super. Ct. 2002). However, since the Court will read the Offer Letter and the NDA separately, the NDA's choice-of-law provision does not apply to the Offer Letter and the Court needs to determine which state's law to apply to this breach of contract claim. In the absence of a choice-of-law provision in the contract, Pennsylvania courts examine whether competing states' laws are in conflict and then determines which has greater interest in application of its law. *Budtel Associates, LP v. Continental Casualty Co.*, 915 A.2d 640, 644-45 (Pa. Super. Ct. 2006). "In determining which state has the greater interest in the application of its law, one method is to see what contacts each state has with the

accident, the contacts being relevant only if they relate to the 'policies and interest underlying the particular issue before the court.'" *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970) (quoting *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964)).

The two relevant state laws are Virgina and Pennsylvania. A conflict does not appear to exist in contract law between Virgina and Pennsylvania. Even if a conflict does appear, Pennsylvania has the greater interest. At the time of contracting, Riley was a resident of Pennsylvania and working at Oldham's Berwyn office. Riley Dep. 32:21-33:8, ECF No. 56-4; Datawatch Key Fob Record, ECF No. 55-20. The Offer Letter was executed in Pennsylvania by Riley. Riley Dep. 32:21-33:8. The place of performance was also Pennsylvania as Riley was designated to work in Berwyn, PA. Offer Letter, ECF No. 55-17 at 2. Because these contacts give Pennsylvania a greater interest in the application of its law, the Court will use Pennsylvania law to interpret the Offer Letter.

The contract interpretation and choice-of-law issues having been addressed, the breach of contract claim regarding the Offer Letter is straightforward. The terms of the Offer Letter state Riley is entitled to severance pay if he is terminated by Oldham Global before October 1, 2024. The facts undisputably demonstrate Riley was terminated before October 1, 2024, entitling him to severance pay. Riley did not receive a severance payment. Therefore, this issue does not raise a genuine dispute of material fact and Riley is entitled to judgment as a matter of law as to his breach of contract claim.

Riley also succeeds on his PWPCL claim. The PWPCL defines "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 Pa. C.S. § 260.2a. At the time of contracting, Riley was a

9

resident of Pennsylvania working for Oldham out of their Pennsylvania officer, meaning he is covered by the PWPCL. Additionally, the PWPCL covers severance payments as this Court has previously ruled. ECF No. 25. So, Riley is entitled to recover his severance under the PWPCL

Oldham's counterclaims of unjust enrichment and promissory estoppel fail as a matter of law. "In Pennsylvania, the quasi-contractual doctrine of unjust enrichment . . . does not apply when a written agreement or express contract exists between the parties." *Ruby v. Abington Memorial Hosp.*, 50 A.3d 128, 136 (Pa. Super. Ct. 2012). Promissory estoppel claims are also unwarranted when an enforceable contract exists. *Carlson v. Arno-Ogden Memorial Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (citing *Cardmone v. Univ. of Pittsburgh*, 384 A.2d 1228, 1233 & n.5 (Pa. Super. Ct. 1978)). Both Oldham's unjust enrichment and promissory estoppel are unwarranted because the Offer Letter constitutes an enforceable contract.

However, Oldham brings a counterclaim, asserting the Offer Letter is a voidable contract due to fraud in the inducement performed by Riley. Oldham's fraud in the inducement claim has two bases: (1) Mr. Riley was never the CEO for PepsiCo and (2) he did not raise $62.5 million when CEO of Road Runner media. Def.'s Mot. Summ. J. 4, ECF No. 55. Both parties allege there is an absence of genuine issue of material fact in their cross-motions for summary judgment. However, the Court identifies areas of disputed genuine material fact in the fraud claim that must be resolved at trial.

The elements of a fraud in the inducement claim include "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 257 (3d Cir. 2013). A

party must prove each of these by clear and convincing evidence. *Id.* If a party proves fraudulent misrepresentation induced an agreement, that agreement is void or voidable. *1726 Cherry St. Partnership v. Bell Atlantic Properties, Inc.*, 653 A.2d 663, 666-67 (Pa. Super. Ct. 1995).

A misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation. *Silverman v. Bell Sav. & Loan Asso.*, 533 A.2d 110, 113 (Pa. Super. Ct. 1987), *appeal denied*, 542 A.2d 1371 (Pa. 1988). "One deceived need not prove that fraudulent misrepresentation was the sole inducement . . . a material inducement is sufficient." *Id.* (citations omitted). Riley argues he had ample experience in revenue generation and executive leadership which made the alleged misrepresentations immaterial to the decision to hire him. Pl.'s Br. Supp. Mot. Partial Summ. J. 10-11, ECF No. 56-2. Oldham argues these representations were the reason Riley was hired as CEO for Actum. Def.'s Mot. Summ. J. 12, ECF No. 55. A reasonable jury could find for either result given the fact intensive inquiry needed to determine if these misrepresentations were a material inducement.

The element of intent is also a genuinely disputed issue of material fact here. Oldham claims Riley intended to mislead by holding himself as being a former CEO of PepsiCo and as having raised $62.5 million. *Id.* at 11-13. Riley denies the record shows he intended to perform these misrepresentations, instead asserting his representations were accurate. Pl.'s Br. Supp. Mot. Partial Summ. J. 11-12, ECF No. 56-2. The resolution of this issue depends a large part on the credibility of Riley himself. Genuine issue of material fact and credibility are common "where intent is a substantive element of the cause of action because intent is generally to be inferred from the facts and conduct of the parties." *Associated Hardware Supply Co. v. Big Wheel Distributing Co.*, 355 F.2d 114, 121 (3d Cir. 1965) (finding genuine issues of material fact regarding a fraud in the inducement counterclaim). Therefore, this issue must be resolved at trial by a fact finder.

Justifiable reliance is also generally a question of fact. *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 139 (3d Cir. 2005) ("We stress, as have the Pennsylvania courts, that the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury."); *Silverman,* 533 A.2d at 115. Both parties dispute whether Oldham had justifiably relied on Riley's representation that he raised $62.5 million while acting as CEO of Road Runner Media. Pl.'s Br. Supp. Mot. Partial Summ. J. 12-14, ECF No. 56-2; Def.'s Br. Supp. Opp'n Pl.'s Partial mot. Summ. J. 10-12, ECF No. 59. In particular, Riley asserts Oldham was put on notice about the potential falsity of the representation by negative press coverage about Riley. Pl.'s Br. Supp. Mot. Partial Summ. J. 12-13, ECF No. 56-2. This disputed issue should be presented to a jury.

These elements of fraud in the inducement present genuine issues of material fact that this Court cannot resolve at summary judgment. Additionally, the pending resolution of the fraud in the inducement issue precludes this Court from granting summary judgment on the other claims. If Oldham's fraud in the inducement claim is successful at trial, then the Offer Letter is void and the Plaintiff's breach of contract and PWCL claims will fail. Without a valid contract, Oldham's promissory estoppel and unjust enrichment claim also become warranted. As counsel for both parties conceded at oral argument, the case here will hinge on whether or not fraud was perpetrated. Therefore, Riley's and Oldham's motions for summary judgments are denied and the parties will proceed to trial on the fraud in the inducement claim.

**CONCLUSION**

Accordingly, the Court will deny Plaintiff Christopher Riley's and Defendant Oldham Global's motions for summary judgment.

An appropriate Order follows.

BY THE COURT:

<u>/s/ Juan R. Sánchez</u>
Juan R. Sánchez, J.