IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER RILEY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-1487 |
| | : | |
| OLDHAM GLOBAL, LLC | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **August 12, 2026**

On October 21, 2025, a civil jury returned a verdict in favor of Plaintiff Christopher Riley and against Defendant Oldham Global, LLC on Oldham Global's fraudulent inducement counterclaim and breach of contract affirmative defense to Riley's claim for severance pay under the terms of his employment agreement. The jury also returned a verdict against Riley on Oldham Global's counterclaim for breach of contract based on Riley's violation of a Non-Disclosure and Noncompetition Agreement ("NDA"). Following the jury's verdict, Oldham Global moved for a new trial under Rule 59, claiming the Court erred by instructing the jury that the "clear and convincing" evidence standard is high and exacting, sustaining a hearsay objection to an affidavit, refusing to submit the issue of consequential damages to the jury, and not allowing the jury to consider whether Riley's severance pay was conditioned on his compliance with the NDA. None of these arguments warrant a new trial. The Court will therefore deny the motion in full.

**BACKGROUND**

On October 1, 2023, Oldham Global offered Christopher Riley a job. Riley Dep. 31:23-32:14; 122:17-21, Dkt. No. 56-4. On November 8, 2023, Riley accepted the offer and signed an offer letter ("Offer Letter"). Offer Letter, Dkt. No. 55-17 at 2-4. In the Offer Letter, Oldham agreed to pay Riley an annual salary of $350,000 to serve as the Coeus Operating Partner of Oldham Global and the Chief Executive Officer of Actum Pharma Services, LLC, a company

owned by Oldham Global. Dkt. No. 55-17 at 2. The Offer Letter states: "If Oldham Global serves notice of termination prior to October 1, 2024, severance will be payable to the employee equaling the remaining balance of the first-year salary." Dkt. No. 55-17 at 2-3.

The same day he signed the Offer Letter, Riley also signed a Non-Disclosure and Noncompetition Agreement ("NDA") with Oldham Global and provided it with a copy of his resume and his LinkedIn information. NDA, Dkt. No. 55-18 at 2-7; Riley Resume and LinkedIn Link Email, Dkt. No. 55-19 at 2. The NDA prohibited Riley from disclosing confidential information, soliciting employees, and competing with Oldham Global. Dkt. No. 55-18 at 2-5. It also authorized Oldham Global to seek enforcement of the agreement in court and recover expenses in doing so. *Id.* at 4-5. It additionally contained a choice of law provision selecting Virginia law to govern its terms and enforcement. *Id.* at 5.

Even before he formally accepted the offer, Riley began working at Oldham Global's office located in Berwyn, Pennsylvania starting October 2023. Def.'s Statement of Material Facts ¶ 49, Dkt. No. 55-1; Datawatch Key Fob Record, Dkt. No. 55-20. On January 18, 2024, Oldham terminated Riley's employment. Riley Termination Letter, Dkt. No. 55-23 at 3. Oldham claims Riley lied about his qualifications and experience. *Id.* Riley represented on his resume, both provided to Oldham Global and listed on his LinkedIn page, that he served as CEO of PepsiCo Australia and raised $62.5 million while CEO of another company (Road Runner Media). Riley Resume, Dkt. No. 55-24 at 1, 5; Riley LinkedIn Page, Dkt. No. 55-26 at 2, 5-6. Riley did not serve as CEO of PepsiCo Australia, but instead served as its Managing Director. PepsiCo Document, Dkt. No. 55-25. Riley claims while he did not hold the title of CEO, the title of Managing Director is an equivalent title in responsibility and experience to CEO in Australia. Pl.'s Br. Supp. Mot. Partial Summ. J. 7-9, Dkt. No. 56-2. As to the Road Runner claim, he asserts he raised $62.5

million in initial commitments to scale the business, but the contract was terminated by Road Runner after $2 million was paid out. *Id.* at 7. Neither party disputes that Oldham initiated the termination, and Riley has not received severance pay.

On April 10, 2024, Riley filed a complaint, asserting breach of contract and Pennsylvania Wage Payment and Collection Law (WPCL) claims. Dkt. No. 1. On June 6, 2024, Oldham Global filed an answer, which included affirmative defenses and counterclaims for fraud in the inducement, breach of contract, unjust enrichment, promissory estoppel, and common law abuse of process. Dkt. No. 5. Oldham Global moved to dismiss Riley's WPCL claim the same day. Dkt. No. 6. On February 13, 2025, this Court denied Oldham Global's motion to dismiss. Dkt. No. 26. Then on September 24, 2025, the Court denied the parties cross-motions for summary judgment, finding Oldham Global's fraud and breach of contract counterclaim and its breach of contract affirmative defense presented genuine issues of material fact for trial. Dkt. Nos. 76 & 77.

The case proceeded to trial on October 20 and 21, 2025. Dkt. Nos. 86 & 88. Two witnesses testified: Plaintiff Christopher Riley and Bill Oldham, the Chairman and President of Defendant Oldham Global. The jury returned a verdict finding Riley did not fraudulently induce or materially breach the Offer Letter. Dkt. No. 87 at 1. The jury did find Riley violated the NDA and awarded Oldham Global $1.00 in nominal damages. *Id.* at 1-2.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 59(a), the "court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." The "decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) (citation omitted). But a court may "not

substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'" *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992) (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960) (en banc)). Instead, a new trial should only be granted when "the great weight of the evidence cuts against the verdict" and "a miscarriage of justice would result if the verdict were to stand." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (citations and internal quotation marks omitted).

**DISCUSSION**

Oldham Global argues it is entitled to a new trial pursuant to Rule 59 because the Court (1) gave an additional instruction on the "clear and convincing" evidence standard to the jury, (2) prohibited the admission of a piece of evidence based upon a hearsay objection, (3) did not submit the issue of consequential damages to the jury, and (4) did not instruct the jury to consider whether the Offer Letter was conditioned on compliance with the NDA. The Court rejects all these arguments for a new trial and will address each of them in turn.

Oldham Global claims the Court's decision to modify the jury instructions on the "clear and convincing" standard was improper. The Court, however, only did so because Oldham Global's counsel made statements that threatened to confuse the jury. During her closing rebuttal, Oldham Global's counsel stated:

> Plaintiff's counsel used the word, "heavy", "significant". You're not going to see that language anywhere in the charge. That's not the standard that we have a heavy or significant burden to show clear and convincing evidence. It's just evidence that produces, in your mind, a firm belief or conviction that the allegations sought to be proved by the evidence are true. A firm belief in your mind, ladies and gentlemen. So not a grain of sand, but anything above that that you firmly believe to be true, okay? Not significant proof. Not a heavy burden.

Trial Tr. Day 2 at 163:14-23, Dkt. No. 98. Riley's attorneys objected to this characterization of the "clear and convincing" standard. *Id.* at 165:8-166:3. The Court agreed, and upon Riley's

request added the following to the jury instructions: "This is a very high standard. It's an exacting evidentiary standard, clear and convincing evidence." *Id.* at 165:17-167:4, 177:24-178:1.

The Court continues to find defense counsel's characterization of the "clear and convincing" standard to be incorrect and improper, so a clarifying instruction was proper. Defense counsel attempted to minimize Oldham Global's burden in proving fraud. This attempt is understandable because the "clear and convincing" standard for fraud is high. *See, e.g., Mellon v. Barre-Nat'l Drug Co.*, 636 A.2d 187, 189 (Pa. Super. Ct. 1993) ("It has uniformly been held that a very high standard of proof is required to establish a fraud.").

Oldham Global argues there is no precedent that clearly delineates the line between "preponderance of the evidence" and "clear and convincing" so its closing statement was accurate. But Oldham Global's rebuttal statement was wrong. The Pennsylvania Supreme Court has stated "[t]o establish a claim by a preponderance of the evidence means to offer evidence that outweighs or is more convincing than, by even the smallest amount, the probative value of the evidence presented by the opposing party." *Povacz v. Pa. Pub. Util. Comm'n*, 280 A.3d 975, 999 n.25 (Pa. 2022). Meanwhile, the court has described the "clear and convincing" standard as "the highest standard of proof utilized in civil proceedings, requiring 'evidence that is so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.'" *In re Vencil*, 152 A.3d 235, 237 n.1 (Pa. 2017) (alterations in original) (quoting *Commonwealth v. Maldonado*, 838 A.2d 710, 715 (Pa. 2003)). Regardless of where the exact boundary between "clear and convincing" and "preponderance of the evidence" lies, "clear and convincing" cannot be accurately characterized as simply anything above a grain of sand, not heavy, or not significant. Indeed, the case law states the exact opposite. *See Weissberger v. Myers*, 90 A.3d 730, 735 (Pa. Super. Ct. 2014) ("[T]he . . . burden to prove fraud

by clear and convincing evidence as plaintiffs . . . is *significantly heavier* than their burden of preponderance of the evidence . . . ." (emphasis added)). By saying otherwise, Defense counsel blurred the line between "clear and convincing" and "preponderance of the evidence."

As a result, these comments threatened to confuse the jury and cause it to apply an incorrect standard to the fraud claim. In response to this threat, the Court gave an instruction clarifying that clear and convincing was a "very high" and "exacting" standard, consistent with Pennsylvania law. Trial Tr. Day 2 at 177:24-25; S*caife Co. v. Rockwell-Standard Corp.*, 285 A.2d 451, 454 (Pa. 1971) ("Concerning the proof of fraud, our cases have consistently enunciated a very high standard. The question then becomes whether [plaintiff]'s proof of every element met this exacting standard." (citations omitted)). Under the circumstances, this instruction was appropriate. Accordingly, Oldham Global is not entitled to a new trial based on the Court's curative instruction.

Oldham Global also asserts the Court's decision to sustain Riley's hearsay objection to an affidavit Oldham Global sought to admit was erroneous and warrants a new trial. The Court disagrees because the affidavit contained impermissible hearsay and even if it was not hearsay, the danger of unfair prejudice from the affidavit substantially outweighed its probative value.

"Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993). But statements offered to show an "effect on the listener" are not hearsay because they are "not offered for their truth." *United States v. Edwards*, 792 F.3d 355, 357 n.2 (3d Cir. 2015).

Oldham Global sought to introduce an affidavit from Paul Averback that was filed in another case. *See generally* Averback Aff., Dkt. No. 103-3. In the affidavit, Averback accuses Riley of putting a false statement on a resume—that Riley raised $62.5 million for Road Runner

Media. Averback cites an email exchange he had with Randall Lanham, another individual involved with Riley at Road Runner Media, as proof.[1] *Id.* ¶ 24. Oldham Global claims it was seeking to introduce this affidavit for the effect on the listener (Bill Oldham and Riley), but the Court is skeptical. When arguing for the admission of the evidence, defense counsel stated the affidavit "speaks to the veracity of terminating an employee." Trial Tr. Day 2 at 83:2-3. This statement indicates the defense wanted to use it to prove Riley committed fraud. Indeed, in its opening, Oldham Global characterized the affidavit's content, stating:

> Paul Averback says, I learned of the fraud through Randall Lanham . . . . And so he attaches an email . . . . And in this email, the two of them are talking about Road Runner Media. And Paul Averback asked the question, so wait, did you guys ever secure the 62.5 or not? And Randall and him says, no, the deal fell through. The deal never went through due to COVID. Okay. *Proof that the deal was just false.*

Trial Tr. Day 1 at 18:4-17, Dkt. No. 97 (emphasis added). This shows Oldham Global intended to use the affidavit to prove the truth of the matter asserted—that Riley never raised $62.5 million.

"[W]hile [Oldham Global] may argue . . . the statements are not hearsay because they were made to show the effect on the listener," the Court finds "even if the evidence w[as] admissible its slight probative value is [substantially] outweighed by the unfair prejudice to [Riley]." *Cange v. Phila. Parking Auth.*, No. 08-3480, 2010 WL 365468, at *4 (E.D. Pa. Feb. 1, 2010). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The unfair prejudice here is high. The affidavit contains many allegations of misconduct by Riley regarding his relationship with Averback and the company Nymox which are unrelated to the claims in this case. Averback Aff. ¶¶ 7-21, 23, 25. It also contains allegations that Riley lied about raising $62.5 million for Road Runner Media. *Id.* ¶ 24. These allegations are at the heart

---

[1] Neither Averback nor Lanham was called as a witness or present at trial.

of the dispute here. But if the jury was allowed to view this evidence, it would have seen hearsay statements that accuse Riley of fraud. Meanwhile, Riley would be hampered in rebutting these specific statements because the declarant (Averback) was not present in court or called as a witness. *Cange*, 2010 WL 365468, at *4 ("The defendant will be unable to call the [declarant] to the stand and verify that the statements were made, what [the declarant's] reaction to the statements were at the time, or ask any other pertinent question."). More troubling, the affidavit relies on email statements from Lanham, creating two layers of hearsay.

Meanwhile, the probative value of the affidavit is low. Note, the affidavit is alleged to be probative because of how it impacted Bill Oldham and Riley and their subsequent actions, not as independent evidence of Riley's fraud or the truth of the allegation.[2] But the Court had allowed defense counsel to talk about the steps Oldham and Riley took after reading the affidavit. It was clear to the jury that Oldham believed Averback's allegations and fired Riley, while Riley disputed them. The parties also do not dispute what the affidavit said—that Averback accused Riley of resume fraud—but only dispute the veracity of the accusations (i.e., the truth of the matter asserted).[3] "Rule 403 'probative value' of an item of evidence . . . may be calculated by comparing

---

2 Otherwise, Oldham Global would have been introducing the affidavit for the truth of the matter asserted, and it would be inadmissible as hearsay. Fed. R. Evid. 801, 802.

3 The following exchange occurred during Riley's cross examination:

> Q. And did you understand that Paul Averbac[k] had made a declaration in connection with the California action, making certain allegations about you having committed resume fraud?
> A. No. You mean the 62.5 million that wasn't raised? That's not fraudulent. I actually raised the funds.
>
> . . . .
>
> Q. . . . In connection with that action filed against you in California, did you understand that Paul Averback, the CEO, had submitted a declaration making certain allegations in that case . . . against you?
> A. Yes.

evidentiary alternatives." *United States v. Bailey*, 840 F.3d 99, 122 (3d Cir. 2016) (quoting *Old Chief v. United States*, 519 U.S. 172, 184 (1997)). Because the evidence here is redundant, it has little probative value. As such, its probative value is substantially outweighed by the unfair prejudice it would create. *Id.* at 123 (finding evidence "should have been excluded because their aggregate risk of unfair prejudice was tremendous while their probative value was low given the availability of other evidence" (internal quotation marks and citation omitted)).

Further, a new trial is not warranted because any potential error in the evidentiary ruling was harmless. *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 205 (3d Cir. 2000). "[S]uch error is harmless . . . if it is highly probable that the error did not affect the outcome of the case." *Id.* (internal quotation marks and citation omitted). As explained above, the probative value of the affidavit is so slight that its inclusion would not have affected the outcome of this case. Thus, the Court's decision to preclude this evidence was justified and not a reason to grant a new trial.

Oldham Global also objects to this Court's decision to prevent the submission of consequential goodwill damages to the jury for the NDA breach of contract counterclaim. The Court's ruling was proper because Oldham Global failed to provide sufficient evidence of its damages to warrant submitting the issue to the jury. Oldham Global had the "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted." *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 136 (Va. 2009) (citation omitted).[4] "[S]peculation and conjecture cannot form the basis of the recovery." *Id.* (citation omitted).

---

Trial Tr. Day 1 at 44:18-45:21.

[4] Both parties cite to Pennsylvania law to support their arguments on this issue. But the NDA's choice of law provision explicitly states Virigina law applies. Dkt. No. 55-18 at 5 ("The terms and enforcement of this Agreement are governed by the laws of . . . Virginia, without regard to conflict of laws rules."). As such, the Court will apply Virginia law to this damages issue.

The only testimony supporting Oldham Global's claim for damages was a brief statement from Bill Oldham:

> [A]s an organization that supports numerous large pharmaceutical companies as well as small ones, we are under a great deal of due diligence on a regular basis, and if there are legal actions that are outstanding -- are related to -- or related to our - our -- our senior leaders, those things have to be disclosed. *So they're regularly disclosed and they impair our goodwill. They also are something that we have had to explain to potential investors. We've had to explain to auditors, to our bank. We have had to expend numerous amounts of funding on -- on attorneys to protect ourselves from these -- from these efforts*.

Trial Tr. Day 2 at 84:20-85:8 (emphasis added).

Oldham Global has framed this testimony as supporting goodwill damages. It justifies relying on this minimal evidence because various cases indicate goodwill damages are hard to assess. This is true. Goodwill damages are hard to assess. *21st Century Sys., Inc. v. Perot Sys. Gov't Servs., Inc.*, 726 S.E.2d 236, 241 (Va. 2012) ("[G]oodwill is one of those intangible assets of an established business difficult to describe and impossible of valuing with mathematical precision, but . . . of very real existence and of substantial value." (internal quotation marks and citation omitted)). But the fact that these damages are hard to assess does not absolve a party's responsibility to present competent evidence of the amount of damages it incurred. *Id.* at 237-38, 241-43 (finding a plaintiff failed to provide evidence to support an award of lost goodwill damages for a breach of non-disclosure agreement claim). Indeed, in cases where the prevailing party recovered goodwill damages, that party presented actual evidence. *See, e.g.*, *Advanced Marine Enters., Inc. v. PRC Inc.*, 501 S.E.2d 148, 156 (Va. 1998) ("In determining [plaintiff]'s damages for lost goodwill, the chancellor accepted [an expert]'s variation of the market value approach, a frequently-used method for computing goodwill damages that is based on the difference between the price a business would sell for and the value of its non-goodwill assets."). There must be evidence that allows the jury to place some actual monetary amount to the damages.

Oldham Global provided insufficient evidence at trial. It did not present any evidence indicating what amount it paid in attorneys' fees or compliance costs after the breach. It did not present any evidence of reductions in business opportunities or profits. It did not present any evidence of even one specific example of incurring goodwill damages or reputational harm. It only presented Bill Oldham's brief testimony on the subject. Allowing the jury to award damages based on Oldham stating "[w]e have had to expend numerous amounts of funding on -- on attorneys to protect ourselves from these -- from these efforts" could result in a jury award ranging from hundreds to hundreds of millions of dollars. To have the jury consider how much money is owed to Oldham Global based on this meager evidence would be the definition of speculation. Because submitting the issue of goodwill damages to the jury would force it to speculate, the Court instead instructed it only on nominal damages.[5] This is not a basis for a new trial.

Finally, Oldham Global argues it is entitled to a new trial because the Court did not permit the jury to determine whether the Offer Letter's severance provision was conditioned on compliance with the NDA. The Court has already addressed this issue twice in denying Oldham Global's motion to dismiss and motion for summary judgment. Dkt. No. 25 at 3-5; Dkt. No. 76 at 5-8. Instead of revisiting this issue a third time, the Court will stand by its previous rulings and summarily reject this argument. On this basis, Oldham Global is also not entitled to a new trial.

**CONCLUSION**

Defendant Oldham Global, LLC has not established a basis for a new trial under Rule 59. Its motion will therefore be denied in full. An appropriate Order follows.

---

[5] Nominal damages are appropriate for this exact situation because Oldham Global was injured by the breach of the NDA but failed to prove the amount of damages it incurred. *Kerns v. Wells Fargo Bank*, *N.A.*, 818 S.E.2d 779, 785-86 (Va. 2018) ("Nominal damages are appropriate when . . . from the nature of the case, some injury has been done but the proof fails to show the amount." (internal quotation marks and citation omitted)).

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.